**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 27, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

TARRANT REGIONAL WATER
DISTRICT, a Texas State Agency,

      Plaintiff - Appellee,

v.

RICHARD SEVENOAKS; KENNETH
K. KNOWLES; JACK W. KEELY; ED
FITE; LINDA LAMBERT; FORD
DRUMMOND; LONNIE FARMER;
JESS MARK NICHOLS; RUDOLF
JOHN HERRMANN, in their official
capacities as members of the
Oklahoma Water Resources Board
(OWRB) and the Oklahoma Water
Conservation Storage Commission,

      Defendants - Appellants.

No. 07-6273

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D. Ct. No. 5:07-CV-00045-HE)**

---

M. Daniel Weitman, Assistant Attorney General (Kari Y. Hawkins, Assistant
Attorney General, with him on the brief), Office of the Oklahoma Attorney
General, Litigation Section, Oklahoma City, Oklahoma, appearing for Appellants.

Clyde A. Muchmore, Crowe & Dunlevy, Oklahoma City, Oklahoma (Harvey D.
Ellis and L. Mark Walker, Crowe & Dunlevy, Oklahoma City, Oklahoma; Kevin
L. Patrick and Scott C. Miller, Patrick, Miller, Kropf, P.C., Aspen, Colorado, with
him on the brief), appearing for Appellee.

Before **TACHA**, **BRISCOE**, and **HARTZ**, Circuit Judges.

**TACHA**, Circuit Judge.

The plaintiff-appellee, Tarrant Regional Water District ("TRWD"), is a Texas agency responsible for supplying public water to the northern part of the state. The defendants-appellants are the nine members of the Oklahoma Water Resources Board ("OWRB"), the Oklahoma agency responsible for issuing permits for the appropriation, sale, and use of Oklahoma water. TRWD filed suit in federal district court, alleging that Oklahoma law unconstitutionally prevents TRWD from appropriating or purchasing water located in Oklahoma. The defendants filed a motion to dismiss, claiming in part that the matter was not a ripe "case or controversy," that the defendants were immune from suit under the Eleventh Amendment, and that the court should abstain under the doctrine of *Younger v. Harris.* 401 U.S. 37 (1971). The district court denied the motion, and the defendants now appeal. We hold first that there is a case or controversy ripe for adjudication. We have jurisdiction under 28 U.S.C. § 1292(a)(1) to consider the district court's rejection of Eleventh Amendment immunity, which we AFFIRM. Because we do not have jurisdiction to consider the district court's decision not to abstain, we DISMISS that portion of the defendants' appeal.

# I. BACKGROUND

The Red River begins in the Texas panhandle and flows east along the border of Texas and Oklahoma, and then south through Arkansas and Louisiana. In 1978, these four states entered into the Red River Compact, which apportions water from the river and its tributaries to the signatory states.[1] The Oklahoma legislature has also enacted a series of laws that TRWD calls "anti-export laws," which regulate the use and transfer of surface water in Oklahoma. For example, the legislature established a moratorium on the sale or exportation of water outside the state that is effective until November 2009. Okla. Stat. tit. 74, § 1221.A; Okla. Stat. tit. 82, § 1B(A). The Oklahoma Attorney General also has issued an opinion[2] based on his interpretation of Oklahoma law that concludes: "we consider the proposition unrealistic that an out-of-state user is a proper permit applicant before the Oklahoma Water Resources Board. We can find no intention to create the possibility that such a valuable resource as water may become bound, without compensation, to use by an out-of-state user." Okla. Op.

---

[1]The Compact was approved by Congress, *see* Pub. L. No. 96-564, and therefore has the status of federal law. *See New York v. Hill*, 528 U.S. 110, 111 (2000); *Texas v. New Mexico*, 462 U.S. 554, 564 (1983).

[2]Under Oklahoma law, the defendants are required to follow an attorney general's opinion until a court determines otherwise. *See Hendrick v. Walters*, 865 P.2d 1232, 1243 (Okla. 1993) ("Public officers have the duty to follow those opinions until they are judicially relieved of compliance."). The defendants assert that the Red River Compact itself has overruled this opinion, but the Compact is not a judicial action and therefore does not by itself relieve OWRB officers from compliance with the attorney general's opinion.

Att'y Gen. No. 77-274 (1978).  Other "anti-export statutes" include Okla. Stat. tit. 82, § 105.16(B), which the plaintiffs contend discriminatorily provides for surface water appropriations exceeding seven years only when the use will benefit Oklahoma; Okla. Stat. tit. 82, § 1085.2(2), which prohibits the OWRB from contracting to convey title or allow the use of water outside of Oklahoma without legislative authorization; Okla. Stat. tit. 82, § 1085.22, which prohibits the Oklahoma Water Conservation Storage Commission (of which the defendants are ex officio members, *see* Okla. Stat. tit. 82, § 1085.18) from selling water out of state; Okla. Stat. tit. 82, § 1266(9), which by definition excludes out-of-state entities from membership in an Oklahoma water district; and Okla. Stat. tit. 82, § 1324.10(B), which prohibits an Oklahoma water district from selling or exporting water outside of the state without the consent of the legislature.

TRWD filed suit in federal district court against the defendants in their official capacities, contending that Oklahoma law unconstitutionally prohibits TRWD from obtaining water located in Oklahoma.  According to TRWD, the Red River Compact preempts Oklahoma's "anti-export laws" under the Supremacy Clause, and, additionally, those laws violate the dormant Commerce Clause. TRWD seeks a declaratory judgment that the laws at issue are unconstitutional and a permanent injunction enjoining the defendants from enforcing them. Shortly after it filed its complaint, TRWD submitted an application to the OWRB for an appropriation of water.  The parties later stipulated that the OWRB would

not act on the application until this case was resolved.

The defendants filed a motion to dismiss, arguing that (1) there is no case or controversy as required to establish federal jurisdiction because the issue is not ripe for adjudication; (2) they are entitled to immunity under the Eleventh Amendment; (3) the district court should abstain under *Younger* or *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943); and (4) Louisiana and Arkansas, as signatories to the Red River Compact, are indispensable parties.  The district court denied the motion.  On appeal, the defendants reassert their arguments relating to ripeness, immunity, and *Younger* abstention.[3]

## II.  DISCUSSION

A.    <u>Case or Controversy</u>

The federal courts' jurisdiction extends only to actual cases or controversies.  *Garcia v. Bd. of Educ.*, 520 F.3d 1116, 1123 (10th Cir. 2008).  "[T]his means that, throughout the litigation, the plaintiff must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (internal quotations omitted).  The defendants argue that there is no case or controversy because the issue is not ripe for adjudication.  The defendants

_____

[3]The defendants raised the ripeness issue only in their reply brief, and we generally do not review issues raised for the first time in a reply brief.  *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000).  Because the issue, however, goes to this court's subject matter jurisdiction, we will consider the defendants' challenge.  *See Kaw Nation v. Lujan*, 378 F.3d 1139, 1142 (10th Cir. 2004).

claim the OWRB could still grant TRWD's application, in which case no dispute would exist. We disagree, because "a plaintiff challenging the constitutionality of a state statute has a sufficiently adverse legal interest to a state enforcement officer sued in his representative capacity to create a substantial controversy when . . . the plaintiff shows an appreciable threat of injury flowing directly from the statute." *Wilson v. Stocker*, 819 F.2d 943, 947 (10th Cir. 1987). As the district court explained, a fair reading of the statutes at issue demonstrates that the OWRB is arguably precluded from granting TRWD's application. TRWD has thus shown it faces an appreciable threat of injury sufficient to invoke federal jurisdiction.

B.     Eleventh Amendment Immunity

This court has jurisdiction to hear the OWRB's appeal on the issue of Eleventh Amendment immunity. Generally, only final judgments by the district court are appealable under 28 U.S.C. § 1291. *Woodruff v. Covington*, 389 F.3d 1117, 1121–22 (10th Cir. 2004). When the district court denies Eleventh Amendment immunity, however, that denial may be reviewed interlocutorily under the collateral-order doctrine. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalfe & Eddy, Inc.*, 506 U.S. 139, 147 (1993); *Timpanogos Tribe v. Conway*, 286 F.3d 1195, 1199–1200 (10th Cir. 2002).

For purposes of this appeal, it is not necessary to detail the precise contours of Eleventh Amendment jurisprudence; the following summary is sufficient. The

Eleventh Amendment has been interpreted to bar suits against states and state agencies for money damages in federal court. *See Hans v. Louisiana*, 134 U.S. 1, 20–21 (1890); *Edelman v. Jordan*, 415 U.S. 651, 664–66 (1974); *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1187 (10th Cir. 1998), *overruled on other grounds by Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). However, under the doctrine of *Ex parte Young*, 209 U.S. 123 (1908), Eleventh Amendment immunity does not extend to a state official sued in his official capacity when the plaintiff seeks only prospective, injunctive relief. *Hill*, 478 F.3d at 1255–56. The fact that prospective relief could have financial consequences does not give rise to immunity, but when the requested relief is akin to a retrospective damages award, *Ex Parte Young* is inapplicable and the Eleventh Amendment prohibits the federal suit. *See Edelman*, 415 U.S. at 667–69.

In this case, the defendants are state officials within the ambit of the Eleventh Amendment, and they are sued in their official capacities. Moreover, the complaint purports to seek only prospective, injunctive relief, requesting:

> (A) a declaratory judgment (i) of the invalidity, under the Red River Compact, and the Supremacy and Commerce Clauses of the United States Constitution, of Oklahoma's Anti-Export Laws, including Attorney General Opinion No. 77-274; and (ii) that given Oklahoma's obligations under the Red River Compact and the Commerce Clause, no adverse action may be taken against Plaintiff's Applications based solely upon the fact that Plaintiff is a nonresident of Oklahoma or seeks to deliver or use the appropriated water outside of Oklahoma.
>
> (B) a permanent injunction forbidding Defendants, the members of both the Oklahoma Water Resources Board and Water Conservation Storage

Commission, from enforcing the Anti-Export Laws or abiding by Oklahoma Attorney General Opinion No. 77-274;

. . .

(D) costs incurred by Plaintiff in this action[4]; and

(E) such other equitable and legal relief as the Court may find appropriate and just under the circumstances of this case.

Thus, this case seems to fall squarely within *Ex parte Young*. Indeed, the district court reached this conclusion in holding that the defendants are not immune from suit.

The defendants' counter-argument is essentially a two-step analysis. First, they contend that any decision that infringes upon state sovereignty gives rise to immunity under *Idaho v. Coeur d'Alene Tribe*. 521 U.S. 261 (1997). Second, they argue that if TRWD were to win on the merits, that decision would be akin to granting TRWD's water application, and such a decision would infringe upon Oklahoma's sovereignty.

This argument fails at both steps. First, as is explained more fully below, the issue of sovereignty is no longer a part of our analysis regarding Eleventh Amendment immunity. Second, even if TRWD wins on the merits, that decision will not give TRWD the right to immediately begin collecting Oklahoma water. Such a decision only would declare certain Oklahoma statutes to be

---

[4]Requesting costs does not transform the action into one for money damages. *See Hutto v. Finney*, 437 U.S. 678, 692 (1978).

unconstitutional.

Citing *Coeur d'Alene* and *ANR Pipeline*, the defendants argue that the relief requested in this case affects a core "sovereign interest" of Oklahoma. This infringement on their sovereignty, they argue, entitles them to Eleventh Amendment immunity. In *Coeur d'Alene*, an Indian tribe sued Idaho officials, seeking a declaratory judgment to establish the tribe's right to exclusive use and quiet enjoyment of certain lands. *Coeur d'Alene*, 521 U.S. at 265. Although the suit fell within the traditional scope of *Ex parte Young*, the Supreme Court held the suit was barred. *Id.* at 287. The Court reasoned that the relief requested—the functional equivalent of quieting title—"implicate[d] special sovereignty interests" of Idaho. *Id.* at 281. Tracking this language, we later held in *ANR Pipeline* that *Coeur d'Alene* had narrowed the scope of *Ex parte Young* such that federal courts must examine whether the relief requested "implicates special sovereignty interests." *ANR Pipeline*, 150 F.3d at 1190. When it does, this court wrote, the *Ex parte Young* exception is inapplicable. *Id.*

Both the Supreme Court and this court, however, have since limited the reach of *Coeur d'Alene*. In *Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635 (2002), the Supreme Court did not analyze whether the claim for Eleventh Amendment immunity involved special sovereignty interests. *See id.* at 645. Instead, the Court held that "[i]n determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only

conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Id.* We subsequently acknowledged that our decision in *ANR Pipeline* misconstrued *Coeur d'Alene*. *See Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007). The *Hill* court explained the transformation of our jurisprudence and clarified the scope of *Ex parte Young*:

> The Supreme Court's formulation of *Coeur d'Alene* in *Verizon Maryland* is thus somewhat different from what we had understood it to be in *ANR Pipeline*. . . . [T]he Supreme Court in *Verizon Maryland* clarified that the courts of appeals need not (and should not) linger over the question whether "special" or other sorts of sovereign interests are at stake before analyzing the nature of the relief sought. Thus, to the extent that our decision in *ANR Pipeline* read *Coeur d'Alene* as requiring "federal courts [to] examine whether the relief sought against a state official 'implicates special sovereignty interests,' " we recognize today that *Verizon Maryland* abrogated this step. Instead, the Supreme Court has instructed that we are to proceed immediately in every case to the "straightforward [or so one might hope] inquiry" whether the relief requested is "properly" characterized as prospective or is indeed the functional equivalent of impermissible retrospective relief.

*Hill*, 478 F.3d at 1259 (citation omitted). Accordingly, we reject the defendants' argument that the particular sovereignty issues implicated in this case are relevant to our analysis of Eleventh Amendment immunity. We turn instead to a straightforward inquiry as to whether the relief requested here is properly characterized as prospective.

The relief sought by TRWD—namely, a declaratory judgment that the laws at issue are unconstitutional and cannot be enforced to the detriment of TRWD, as

well as an injunction prohibiting the defendants from enforcing those laws—is clearly prospective. Indeed, the injunctive remedy is nearly identical to that sought in *Verizon Maryland*. *See Verizon Md.*, 535 U.S. at 645 ("The prayer for injunctive relief—that state officials be restrained from enforcing an order in contravention of controlling federal law—clearly satisfies our 'straightforward inquiry.'"). The request "for declaratory relief adds nothing to the prayer for injunction" and therefore does not impact our analysis. *See id.* at 646.

Because the impact on state sovereignty is not part of the analysis, the defendants' second point—that a decision in TRWD's favor effectively will grant the application—need not inform our analysis. The defendants argue, however, that we must determine whether the relief requested "is prospective, not just in how it is captioned but also in its substance." *Hill*, 478 F.3d at 1259. They contend that because a decision in TRWD's favor will effectively grant TRWD's pending water application, that decision would be just as intrusive on the state as a money judgment. *See id.* (characterizing the relief as prospective in part because liability would "not impose upon the state 'a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials'") (italics omitted) (quoting *Verizon Md.*, 535 U.S. at 646); *see also Hill*, 478 F.3d at 1260 (characterizing the relief as prospective in part because "[n]othing in [the] suit calls to mind the sort of literal land grab effort made by the plaintiffs in *Coeur d'Alene* with its consequent significant implications on the state fisc").

The defendants' argument appears to be based on two related premises: (1) that the relief requested in this case makes the suit analogous to the quiet title action in *Coeur d'Alene*, and (2) that invalidating the anti-export laws would encroach on Oklahoma's "ownership" interests in its natural resources, much like a favorable judgment would have done in *Coeur d'Alene*.

To the extent it is even appropriate to draw comparisons to *Coeur d'Alene* after *Verizon Maryland*'s instructions to conduct a "straightforward inquiry" into the relief requested, we disagree with both premises. First, a favorable judgment in this case would not entitle TRWD to appropriate Oklahoma water in the same way that a quiet title action conclusively determines the parties' rights to real property. Rather, the judgment would only put TRWD on the same footing as in-state applicants seeking water appropriations. TRWD's application for water would remain pending, and the defendants would have the discretion to determine whether TRWD's application meets other state statutory and regulatory standards. *See, e.g.*, Okla. Stat. tit. 82, § 105.12 (listing factors the OWRB considers in determining whether to issue a permit to appropriate water); *see also* Red River Compact § 2.10, Pub. L. No. 96-564, 94 Stat. 3305 (1980) ("Nothing in this Compact shall be deemed to . . . [i]nterfere with or impair the right or power of any Signatory State to regulate within its boundaries the appropriation, use, and control of water, or quality of water, not inconsistent with its obligations under this Compact . . . ."). It is also well-established that Oklahoma does not enjoy an

"ownership interest" in water resources located in the state. *See Sporhase v. Nebraska*, 458 U.S. 941, 950–52 (1982); *see also City of El Paso v. Reynolds*, 563 F. Supp. 379, 383 (D.N.M. 1983) (relying on *Sporhase* to reject a similar Eleventh Amendment argument). Thus, we reject the argument that a favorable judgment in this case would be similar to that sought in *Coeur d'Alene*.

Because we conclude that the relief requested in this case is properly characterized as prospective, both as captioned in TRWD's complaint and in substance, the defendants are not entitled to immunity under the Eleventh Amendment.

## C.     Abstention

This court does not have jurisdiction to review interlocutorily the district court's decision not to abstain. A decision *to* abstain normally satisfies the collateral-order doctrine and is therefore reviewable by interlocutory appeal. *In re Tri-Valley Distrib., Inc.*, 533 F.3d 1209, 1216 (10th Cir. 2008). This is so because res judicata requires federal courts to honor any subsequent judgment of the state court, which renders the abstention decision effectively unreviewable on appeal. *See In re Rupp & Bowman Co.*, 109 F.3d 237, 240 (5th Cir. 1997).[5]   On

_____

[5]This court has established a three-part test for determining when the collateral-order doctrine applies, deriving from the Supreme Court's decision in *Cohen v. Beneficial Indus. Loan Corp.* 337 U.S. 541 (1949). "To establish jurisdiction under the collateral order doctrine, defendants must establish that the district court's order (1) conclusively determined the disputed question, (2) resolved an important issue completely separate from the merits of the case, and

(continued...)

-13-

the other hand, several courts have held that an order denying abstention is reviewable after an entry of final judgment and, accordingly, is not immediately appealable. *RRI Realty Corp. v. Inc. Village of Southampton*, 766 F.2d 63, 65 (2d Cir. 1985); *see also Summers v. Leis*, 368 F.3d 881, 889 (6th Cir. 2004); *Confederated Salish v. Simonich*, 29 F.3d 1398, 1403 (9th Cir. 1994); 15A Charles Wright, Arthur Miller & Edward Cooper, Federal Practice and Procedure, § 3914.14 ("Appealability presents no difficulty in such cases [involving abstention orders]. Following the general rule, an order that dismisses the entire action is final, and an order denying dismissal is not final.").

Although this Circuit has never directly held, we have expressed our doubt that the denial of *Younger* abstention is appealable on interlocutory review. *See Robinson v. Kansas*, 295 F.3d 1183, 1187 n.6 (10th Cir. 2002) ("It is not even clear that we would have jurisdiction to consider a *Younger* claim such as that presented in this case on interlocutory appeal."). Today, we join those courts that have so held and conclude that we do not have interlocutory jurisdiction under the collateral-order doctrine to consider an appeal from the denial of a motion to abstain under *Younger* because that decision is capable of effective review upon entry of a final judgment in the case. After a final judgment, this court can

---

[5](...continued)
(3) is effectively unreviewable on appeal from a final judgment." *Crystal Clear Communications, Inc. v. Southwestern Bell Tel. Co.*, 415 F.3d 1171, 1178 (10th Cir. 2005).

-14-

determine whether the district court should have abstained.  *See Simonich*, 29 F.3d at 1403 (noting that review of abstention after final judgment is not moot, even though the district court has already heard the merits).

We also reject the defendants' argument that this court should take pendant jurisdiction over the abstention claim.  The Supreme Court has stated that pendant claims are appealable "if, and only if, they too fall within Cohen's collateral-order exception to the final-judgment rule."  *Abney v. United States,* 431 U.S. 651, 663 (1977).  By that formulation, this court does not have jurisdiction over the abstention issue, because, as noted above, the abstention issue does not fall within the *Cohen* collateral-order exception.  On the other hand, the Supreme Court has suggested that taking pendant jurisdiction over interlocutory appeals might be appropriate in limited circumstances.  *See Swint v. Chambers County Comm'n*, 514 U.S. 35, 50–51 (1995) ("We need not definitively or preemptively settle here whether or when it may be proper for a court of appeals, with jurisdiction over one ruling, to review, conjunctively, related rulings that are not themselves independently appealable.").

This court has stated it will take pendant jurisdiction over an interlocutory appeal only "where the otherwise nonappealable decision is 'inextricably intertwined' with the appealable decision, or where review of the nonappealable decision is 'necessary to ensure meaningful review' of the appealable one." *Timpanogos Tribe*, 286 F.3d at 1200.  In this case, the Eleventh Amendment

immunity and *Younger* abstention issues are not "inextricably intertwined," nor is a review of *Younger* abstention necessary to a meaningful review of immunity. In our Eleventh Amendment immunity analysis, we focused on whether Oklahoma's sovereign immunity prevents a federal court from deciding whether the Red River Compact preempts Oklahoma law. We can—and did—engage in that analysis without addressing the issues related to *Younger* abstention, which involve whether the federal action improperly interferes with a state judicial or administrative proceeding. *See Seneca-Cayuga Tribe of Okla. v. Okla. ex rel. Thompson*, 874 F.2d 709, 711 (10th Cir. 1989). Thus, we decline to exercise pendant jurisdiction over the appeal of the refusal to abstain.

### III.  CONCLUSION

We hold first that there is a "case or controversy" that is ripe for adjudication. We conclude that the defendants are not entitled to Eleventh Amendment immunity, and therefore we AFFIRM the district court's order on this point. We do not have jurisdiction to consider the defendants' appeal of the district court's refusal to abstain under *Younger* and therefore DISMISS that portion of this appeal.